UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DARBY BROWN,

    Plaintiff,

        v.                                        No. 3:14-cv-1784(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING

Plaintiff Darby Brown has filed this appeal of the adverse decision of the Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 15]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 16]. The undersigned heard oral argument in this matter on May 18, 2016. For the reasons that follow, the Commissioner's decision is affirmed.

## Legal Standard

The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

1

**Background**

Plaintiff filed his DIB application on July 20, 2012 and his SSI application on November 15, 2012, alleging a disability onset date of May 18, 2012.  His claims were denied at both the initial and reconsideration levels.  Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Deirdre R. Horton on January 30, 2014.  On April 25, 2014, the ALJ issued a decision denying Plaintiff's claim.  The Appeals Council denied review, making the ALJ's unfavorable decision the final decision of the Commissioner.  This action followed.

Plaintiff was 54 years old on the alleged disability onset date.  (R. 23).  He last worked in May 2012 as a supervisor in Home Depot's hardware department, a position he had held for five years.  (R. 261-62).  Plaintiff also has prior work experience as a manager at Walmart and an assistant manager at Benny's.  (R. 263).  Plaintiff completed high school, some college, and spent four years serving in the military, from which he was honorably discharged.  (R. 269).  Plaintiff has alleged disability based on diabetes, high cholesterol, and depression.

In accordance with the Court's scheduling order, the parties have submitted a Stipulation of Facts, which the Court adopts and incorporates by reference herein.  [Doc. # 19].

**The ALJ's Decision**

The ALJ issued her decision on April 25, 2014.  The ALJ followed the sequential evaluation process for evaluating disability claims.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 16).  At step two, the ALJ found that Plaintiff's adjustment disorder was a severe impairment, and that Plaintiff's diabetes mellitus and high cholesterol were nonsevere.  (R. 17-18).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments. (R. 18-20). The ALJ then found that Plaintiff retained the following residual functional capacity[1]:

> Plaintiff can perform a full range of work at all exertion levels with the following nonexertional limitations: he is limited to occasional interaction with the general public and occasional interaction with coworkers and supervisors.

(R. 20-22). At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (R. 22). Finally, at step five, the ALJ used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter the "Grids"), as a framework in determining that there are jobs in significant numbers in the national economy Plaintiff can perform. (R. 23). In making the step five finding, the ALJ determined that the RFC's nonexertional limitations have little or no effect on the occupational base of unskilled work at all exertion levels. (*Id.*). Accordingly, the ALJ found Plaintiff to be not disabled.

## Discussion

Plaintiff raises two issues on appeal, which the Court will discuss in the order of emphasis given at oral argument.

1. <u>The ALJ's development of the record with respect to Plaintiff's physical conditions:</u>

Plaintiff first argues that the step two finding that his diabetes was nonsevere is in error because the ALJ failed to assist Plaintiff in presenting his claim. The crux of Plaintiff's argument is that the record does not contain a physical examination from a period of time during which Plaintiff was unable to afford treatment due to lack of medical insurance, and so the ALJ should have ordered a consultative exam ("CE") to enable her to make an accurate assessment of Plaintiff's RFC. After careful consideration, the Court rejects this argument.

---

[1] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

It is well-established that the ALJ has a duty to develop the record. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). This duty comes from the Commissioner's obligation to "develop a complete medical record before making a disability determination, and exists even when, as here, the claimant is represented by counsel." (*Id.*) (internal citations omitted). In fulfilling this duty, the ALJ has the option of ordering a CE. A CE is undertaken "to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision." 20 C.F.R. §§ 404.1519a; 416.919a. The decision to order a CE is made on an individual, case-by-case basis. 20 C.F.R. §§ 404.1519; 416.919.

Plaintiff relies on *Falcon v. Apfel*, 88 F.Supp.2d 87 (W.D.N.Y. 2000) in support of his position that the ALJ erred in not ordering a CE. In *Falcon*, though, remand was ordered upon a finding that the ALJ had a duty to develop the record to clarify a consulting physician's "inconclusive" report which stated that the physician needed to review MRI and CT scan results from tests that had already been performed. *Id.* at 91. Here, the circumstances are much less compelling because there is no inconclusive report such that the evidence is inconsistent or insufficient.

The most recent treatment notes from the Joslin Center contained in the record are from January 2012. These notes indicate that Plaintiff was doing well overall. (R. 209). The state agency reviewing physicians found that Joslin Center records from January 2011 and January 2012 showed stable yearly visits and no complications related to diabetes. (R. 39). At the reconsideration level, Dr. Lee found that while Plaintiff alleged vision problems related to diabetes, there was never any medical evidence documenting any impairments secondary to the diabetes, and no evidence to support a severe vision impairment. (R. 50, 227). At the hearing, Plaintiff testified that he was without medical insurance from June 2012 until he obtained state

coverage in November 2013. (R. 267-68). He also stated that he does not have a primary care physician due to lack of medical coverage, but in response to the question of whether he was currently treating with a doctor, testified that he "only go[es] to the Joslin's Center for [his] diabetes." (R. 267). He further stated that he takes insulin, which he gets from CVS and is prescribed by the Joslin Center. (R. 265, 268). At the start of the hearing, Plaintiff's attorney informed the ALJ that she was awaiting updated records from Joslin, and the ALJ held the record open for two weeks in order to receive those records. (R. 256). No additional records were submitted.

The Court finds that, under these circumstances, the ALJ fulfilled her duty to develop the record. While Plaintiff did testify to worsening of symptoms relating to his diabetes in the year or so before the hearing, his testimony and statements from his attorney also indicate (or at the very least strongly suggest) that updated records from Joslin were forthcoming. (R. 260, 263-65). The ALJ left the record open to accept those records. When an ALJ holds open the record, and a claimant fails to provide additional evidence, the ALJ will be found to have fulfilled her duty to develop the record. *See Torres v. Colvin*, No. 12 CIV. 6527 ALC SN, 2014 WL 4467805, at *6 (S.D.N.Y. Sept. 8, 2014) (collecting cases); *Melton v. Colvin*, No. 13-cv-6188 MAT, 2014 WL 1686827, at *8 (W.D.N.Y. Apr. 29, 2014) (collecting cases).

This, coupled with the evidence available that showed no complications from the diabetes, and a stable condition from 2011 to 2012, makes it reasonable for the ALJ to not have ordered a CE. This finding is bolstered by Plaintiff's testimony that he had medical insurance for three months prior to the hearing, and his failure to submit any records from this period of time in which he could have obtained covered treatment if he so chose. This is not to say that a

CE would not have been helpful, but that, in this case, lack of one is not an error requiring remand.

This issue was a close one. *Burger v. Astrue*, 282 Fed.App'x 883 (2d Cir. 2008), which the Court uncovered through its independent research, illustrates a scenario in which remand for failure to order a CE would be warranted. In *Burger*, the Second Circuit held that the ALJ was obligated to further develop the record by obtaining a CE when the ALJ discredited the claimant's testimony about limitations resulting from a severe impairment because the claimant "sought only 'sporadic' treatment for her conditions." *Id.* at 884. The court found that the claimant's explanation for the lack of treatment – that she was uninsured and could not afford regular care – along with a "recognized severe impairment" and "'somewhat credible' testimony as to limitations that would preclude past employment," required the ALJ to secure a CE. *Id.* at 884-85. *Burger* does not, however, require remand in the instant matter because there are meaningful factual distinctions between the two. Here, Plaintiff's diabetes was found to be nonsevere, and there was a period of time in which he was insured and could have obtained treatment. There was also testimony indicating Plaintiff had been receiving treatment for diabetes even when he was uninsured and that updated treatment records would be provided. These factual distinctions convince the Court that, unlike in *Burger*, remand is not necessary here.

A CE will be ordered "to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision." 20 C.F.R. §§ 404.1519a; 416.919a. "An ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it." *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 32 (2d Cir. 2013). As set forth above, such is the case here.

The Court also finds that the ALJ did not hold Plaintiff's lack of treatment against him. Plaintiff relies on SSR 82-59 to posit an ALJ must consider a claimant's inability to afford treatment, and not hold a financial inability against the claimant. SSR 82-59, however, applies only to a "*disabling impairment* which is amenable to treatment that could be expected to restore [a claimant's] ability to work" and requires that the claimant "must follow the prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment." *Titles II & Xvi: Failure to Follow Prescribed Treatment*, SSR 82-59 (S.S.A. 1982) (emphasis added). Because Plaintiff does not have a disabling impairment, SSR 82-59 is inapposite.

In any event, the ALJ did consider Plaintiff's inability to afford treatment, and did not hold it against him. An ALJ should not discount a claimant's credibility based solely on the claimant's inability to afford treatment. *See Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A. July 2, 1996). Here, the ALJ appropriately considered Plaintiff's lack of medical insurance. In noting that Plaintiff had not provided any medical evidence of disability related to diabetes, the ALJ specifically addressed his claim of an inability to pay: "Although he reported lack of insurance as the reason he has not sought proper medical treatment, the claimant collected unemployment benefits through the third quarter of 2013 and further testified that he became eligible for State benefits as of November 2013." (R. 21). The ALJ's consideration was proper.

Finally, to the extent Plaintiff argues that the ALJ erred in not finding Plaintiff's diabetes severe, this argument must fail. At step two, the ALJ determines whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe. 20 C.F.R. §§ 404.1520; 416.920. Severe means that the impairment "significantly limits" a

claimant's ability "to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c). At this step, medical evidence alone is considered in assessing the effect of the impairment or impairments on an individual's ability to do basic work activities. *See* SSR 85-28 (S.S.A. 1985). Plaintiff has not provided any medical evidence of how his physical ailments significantly limit his ability to do work. Thus, the ALJ's step two finding is supported by substantial evidence.

2. <u>The ALJ's failure to consult a vocational expert</u>

Plaintiff next argues that the ALJ erred by using the Grids as a framework at step five and not consulting a vocational expert ("VE").[2] Specifically, Plaintiff avers that the nonexertional limitation to occasional interaction with coworkers, the public, or with supervisors requires use of a VE to determine whether there were jobs Plaintiff could perform. This argument has been rejected numerous times already in this circuit, and will not prevail here.

When a claimant's nonexertional limitations "significantly limit the range of work permitted by his exertional limitations," an ALJ may not rely solely on the Grids at step five and must consult a VE. *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). A nonexertional impairment "'significantly limits' a claimant's range of work when it causes an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's

---

[2] Ancillary to this argument, Plaintiff claims that the ALJ erred in only addressing Plaintiff's social limitations in the RFC when she also identified mild restrictions in activities of daily living and in concentration, persistence, and pace at step two. The Court finds no error in the ALJ not including limitations with respect to activities of daily living and concentration, persistence, or pace in the RFC. The limitations identified in the "paragraph B … criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996). "It follows that the ALJ is not required to explicitly include the 'paragraph B' limitations in his RFC assessment." *Huestis v. Comm'r of Soc. Sec.*, No. 2:13-cv-201, 2014 WL 4209927, at *5 (D. Vt. Aug. 25, 2014). Plaintiff has not pointed to any functional limitations stemming from his mild limitations in these areas that are not addressed by the RFC to unskilled work with limited interaction with others.

possible range of work as to deprive him of a meaningful employment opportunity.'" *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010) (citing *Bapp* at 605-06).

SSR 85-15, upon which the ALJ relied, instructs as follows with respect to whether a mental impairment significantly limits the occupational base of unskilled work:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

*Titles II & Xvi: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985). SSR 85-15 also explains that unskilled jobs at all exertion levels "ordinarily involve dealing primarily with objects, rather than with data or people." *Id.*

A limitation to occasional interaction with others does not significantly limit the range of unskilled work, and reliance on the Grids in such an instance is appropriate. *See Verret v. Colvin*, No. 3:14-cv-234 (SRU), 2016 WL1182980, at *2 (D. Conn. Mar. 28, 2016) (an RFC requiring "only occasional interaction with others is in accord with the description of unskilled work that requires following simple instructions—especially in light of the fact that such jobs ordinarily involve dealing primarily with objects, rather than with data or people") (internal quotation marks omitted); *Bombard-Senecal v. Comm'r of Soc. Sec.*, No. 8:13-cv-649 GLS, 2014 WL 3778568, at *4 (N.D.N.Y. July 31, 2014) (holding that the ALJ could rely on the Grids when claimant could perform "the full range of unskilled light work that requires only occasional interaction with others"); *Pritchard v. Colvin*, No. 1:13-cv-945 DNH/CFH, 2014 WL 3534987, at *3, 10 (N.D.N.Y. July 17, 2014) (upholding an ALJ's reliance on the Grids for an RFC to

unskilled work "in a low stress environment with occasional interaction with others"). Accordingly, the ALJ did not err at step five.

## **Conclusion**

After a thorough review of the administrative record and consideration of all of the arguments raised by Plaintiff, the Court concludes that the ALJ did not commit any legal errors and that her decision is supported by substantial evidence. Accordingly, Defendant's Motion to Affirm the Decision of the Commissioner [Doc. # 16] is granted and Plaintiff's Motion to Reverse and/or Remand [Doc. # 15] is denied.

This is not a recommended ruling. The parties have consented to a magistrate judge ordering the entry of judgment in this case. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

SO ORDERED, this  20th  day of May, 2016, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge